660 So.2d 588 (1995)
The CITY OF MONTGOMERY and the City Council of the City of Montgomery
v.
The WATER WORKS AND SANITARY SEWER BOARD OF the CITY OF MONTGOMERY (Two Cases).
Carl EDWARDS and Mildred Duncan Ralph
v.
The CITY OF MONTGOMERY and the City Council of the City of Montgomery.
The WATER WORKS AND SANITARY SEWER BOARD OF the CITY OF MONTGOMERY
v.
The CITY OF MONTGOMERY and the City Council of the City of Montgomery.
1930314, 1930419, 1930472, 1930528.
Supreme Court of Alabama.
March 31, 1995.
*589 Donald V. Watkins, P.C., Montgomery, Joe R. Whatley, Jr., and Sam H. Heldman, and Peter H. Burke, of Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, for appellants City of Montgomery and its city council.
Alvin T. Prestwood and Thomas B. Klinner of Capouano, Wampold, Prestwood & Sansone, P.A., Montgomery, for appellees/cross appellants Carl Edwards and Mildred Duncan Ralph.
Robert E. Sasser and Dorothy Wells Littleton, of Sasser & Littleton, P.C., Montgomery, *590 for appellee/cross appellant Water Works and Sanitary Sewer Board of the City of Montgomery.

On Application for Rehearing
MADDOX, Justice.
The opinion of December 16, 1994, is withdrawn and the following is substituted therefor.
On application for rehearing, the Water Works and Sanitary Sewer Board contends that when this Court wrote its original opinion it misunderstood the procedural posture of this case. The Board's primary argument in support of its application is that this Court was under the erroneous impression that the trial court declared Act No. 93-704, Ala. Acts 1993, unconstitutional. In order to clear up any confusion regarding this Court's understanding of the issues presented on appeal, we substitute this modified opinion, to address this question raised on the application for rehearing; we have also reviewed each of the other issues raised on the application for rehearing, and we are convinced that the application should be overruled.
The legal question presented by this appeal is whether a water and sewer board, created by a municipality as a public corporation, is a "municipal board, committee, or like body" within the meaning of Act No. 93-704, Ala.Acts 1993, an Act applicable to Class 3 municipalities which authorizes those municipalities to alter the membership of municipal boards, committees, or like bodies.[1]
The trial court, in a declaratory judgment action, held that Act No. 93-704 did not apply to the City of Montgomery, a Class 3 municipality, and further held that if the Act did apply, it would be unconstitutional because it would violate the provisions of Section 45 of the Constitution of Alabama 1901. We reverse and remand.
Act No. 93-704 was adopted by the Legislature in 1993, and provides that in Class 3 municipalities every "municipal board, committee, or like body" shall (unless directed otherwise by the municipal body) have a number of members on each board, committee or like body, equal to the number of members of the municipal governing body.[2]
The City of Montgomery is a Class 3 municipality. The Montgomery City Council, on July 20, 1993, enacted Ordinance No. 28-93 ("the Ordinance") to implement the provisions of the Act. There are nine members of the Montgomery City Council. The Ordinance provided in Section 1 that 17 boards, and all boards thereafter created, would have nine members, as specified in the Act. On July 21, 1993, the day after the Ordinance was adopted, the Water Works and Sanitary Sewer Board of the City of Montgomery (hereinafter "Water and Sewer Board"), filed a declaratory judgment action against the City of Montgomery and the City Council of the City of Montgomery (hereinafter "the City),[3] seeking: (1) a declaration that the Act had no application to the Water and Sewer Board and (2) an injunction prohibiting the City from appointing additional members to its board of directors. Carl Edwards, a resident citizen of Elmore County and a member and beneficial recipient of the Employees' Retirement System of the City of Montgomery, and Mildred Duncan Ralph, a resident of the City and County of Montgomery and a *591 taxpayer, filed a motion to intervene and a complaint of intervention, seeking declaratory and injunctive relief. The trial court granted their motion to intervene.
After holding a hearing and taking testimony, the trial court held that the phrase "municipal board, committee, or like body" did not include the Water and Sewer Board. The trial court further held that "[i]f this Court were to construe the Act so as to apply to the Water Board and the additional Alabama public corporations whose boards of directors are either elected or appointed by the Montgomery City Council, the Act would be rendered unconstitutional in that it would amend the pre-existing authorizing legislation for these public corporations without having identified these statutes in its text either by their number or by quoting from their language," and that "[s]uch a result would create a direct violation of Article IV, Section 45 of the Constitution of Alabama....." The trial judge permanently enjoined the City from taking any action to implement the provisions of the Act with regard to the following public corporations: (a) the Water and Sewer Board (the appellee here); (b) the Industrial Development Board; (c) the Montgomery Housing Authority; and (d) the Montgomery Airport Authority. The City appealed, contending that the trial court erred in declaring that the Act was not applicable to the City of Montgomery and that if it were held to be applicable to the City of Montgomery it would be unconstitutional. The Water and Sewer Board and the intervenors, Carl Edwards and Mildred Duncan Ralph, cross-appealed, asserting that if this Court holds that public corporations are "municipal boards, committees, or like bodies" within the meaning of the Act, then the Act violates the "one subject" and "clear expression" requirements of Section 45 of the Alabama Constitution of 1901 and is unconstitutionally vague and uncertain under the provisions of Section 6 of the Constitution of 1901 and the Fourteenth Amendment to the United States Constitution.
In view of the Water and Sewer Board's argument in its brief that the scope of the bill "probably caught legislators sleeping at the time of its passage, or that it probably deceived or confused them," we have examined the legislative history of Act No. 93-704 to find from the House and Senate Journals some information concerning the bill's history during its legislative journey. We, of course, have no other legislative history that would help us to better understand the purpose of the legislation and the underlying public policy reasons that caused the Legislature to adopt Budget Isolation Resolutions to assist in the passage of this Act and to place the bill on special order calendars in both Houses of the Legislature during the final days of the Session.[4]
The City argues that the purpose of the Act was "to enhance democracy in the functioning of municipal boards, committees, and like bodies in Class 3 municipalities." There *592 is no indication in the House or Senate Journals of any contrary purpose.[5]
The basic position of the City could be summarized as follows: The City claims that Act No. 93-704 is constitutional. The City argues that the Legislature has the power to alter the number of members of the boards of public corporations such as the Water and Sewer Board, the Industrial Development Board, the Montgomery Housing Authority, and the Montgomery Airport Authority, even though those boards were initially formed only by an affirmative resolution of the municipal governing body, and even though the members of each board were appointed by the City.
The City contends that these entities, even though public corporations, are included within the phrase "municipal board, committee, or like body," because, the City says, the phrase, given its ordinary meaning, applies to all entities created by the City, the members of which are appointed by the City and which obtain significant benefits from being affiliated with the City.
To determine whether the City is correct, we must apply settled rules of statutory construction. This Court has stated the rule as follows:
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992).
The City argues that the term "municipal board" as used in the Act, which applies only to Class 3 municipalities, must refer to all of those boards that are appointed by the governing body of the municipality pursuant to Section 3.07(e) of the Mayor-Council Act, which is also applicable to Class 3 municipalities. Because all such boards are appointed by the governing body of the municipality, says the City, they are logically called "municipal boards."
"A municipal board or department ... may ordinarily be created by the state or by the municipal corporation, and may be a public corporation disconnected with the government of the municipal corporation or it may be merely a department of the city." McQuillin, Municipal Corporations § 2.30, at 176 (3d ed. 1987).
Although the question this Court was dealing with did not involve the membership of a municipal board, this Court has held in an earlier case that a public corporation formed by a municipality is a "governmental entity" for purposes of a statutory cap on damages that can be recovered. In Guntersville Housing Authority v. Stephens, 585 So.2d 887 (Ala.1991), this Court held that the Guntersville Housing Authority is a "governmental entity" as defined by Ala.Code 1975, § 11-93-1, and is, therefore, subject to the effect of § 11-93-2, which limits the amounts of tort damages and the amount of money under settlements of tort claims that can be recovered against "governmental entities." The basis for the Court's holding was as follows:
"As stated, a `housing authority' is defined as a `public body organized as a body corporate and politic.' § 24-1-22(1). We hold that, because § 11-93-1(1) specifically includes `municipal [and] county public corporations' in the enumeration of various governmental entities, the Guntersville Housing Authority is a governmental entity and falls within the intended scope of § 11-93-2, which limits the amount of damages and settlement money recoverable against a governmental entity." *593 585 So.2d at 888. A similar result was reached in Opinions of the Justices, No. 45, 235 Ala. 485, 179 So. 535 (1938), where this Court held that real property owned by a housing authority is not subject to ad valorem taxes, because the authority is a governmental agency. In Opinions of the Justices, No. 45, this Court stated, "When the city is performing a governmental function, it is none the less so because it is done by the instrumentality of some administrative agency, such as a board, commission, or even a corporation set up for that purpose, created by or for the city's use in that connection." 235 Ala. at 486, 179 So. at 536. This Court stated further, "The mere fact that it is a corporation does not deprive it of the qualities of a governmental agency, nor of the immunities of the government for which it operates." Id. The City contends that this language from Opinions of the Justices, No. 45 is practically dispositive of the issue presented in this appeal. In other words, it argues, the phrase "board, committee, or like body" used in the Act is almost perfectly parallel to "board, commission, or ... corporation," the phrase used by this Court in Opinions of the Justices, No. 45. In Roberts v. Fredrick, 295 Ala. 281, 328 So.2d 277 (1976), this Court held that a housing authority is an administrative agency of the city. In several instances, this Court has declared the status of boards like the ones in this case to be that of municipal government agencies. See International Union of Operating Engineers, Local Union No. 321 v. Water Works Board, 276 Ala. 462, 163 So.2d 619 (1964) (the Birmingham Water Works is a "public agency" and therefore lacks the legal authority to enter a collective bargaining agreement with a labor organization); see Marshall Durbin & Co. v. Jasper Utilities Bd., 437 So.2d 1014 (Ala.1983) (city utilities board acts as an agent of the municipality); see State ex rel. Richardson v. Morrow, 276 Ala. 385, 162 So.2d 480 (1964) ("officer of any municipality" includes a member of the board of directors of the Water Works and Gas Board of the City of Cordova). Based upon these cases, the City contends that the trial court erred in distinguishing between incorporated and unincorporated entities of the City.
On the other hand, the Water and Sewer Board and the intervenors contend that a public corporation, such as the Water and Sewer Board, is not within the term "municipal board, committee, or like body" as that term is used in the Act. They agree with the trial court's finding that "the legislature has not once referred to the Water Board as a `municipal board, committee, or like body,' [and has not] amended legislation affecting the water board through reference to `Class 3 municipalities.'" They argue that the plain language of the Act should be interpreted and that the Act makes no reference to "public corporations" or to the number of "directors" on their governing boards. They contend that this Court has recognized the Water and Sewer Board as a "public corporation" separate and independent from the City. See East Montgomery Water, Sewer & Fire Protection Authority v. Water Works & Sanitary Sewer Board of the City of Montgomery, 474 So.2d 1088, 1091 (Ala.1985). They contend that there is an ambiguity in the phrase "municipal board, committee, or like body," and that the failure of the Legislature to specifically refer to public corporations should be interpreted to mean that the Legislature did not intend to include them within the broad phrase "municipal board, committee, or like body."
The appellees ask that this Court, in determining legislative intent, to consider the Act's potential effect on the current and future operations of the Water and Sewer Board, in addition to the potential impact on financial stability. For example, the Water and Sewer Board says that its revenue bonds are rated by the bond rating guidelines of Standard & Poor's Municipal Finance Criteria. Its rating, it says, is the result of several subjective factors, including the continuity of management assured by the Water and Sewer Board's composition of directors who serve rotating six-year terms, the election of the directors by the City Council without regard to district lines, and the Water and Sewer Board's ability to set rates for financial reasons, without political control. The appellees argue that the ordinance implementing the Act will undoubtedly result in lower bond ratings because it calls for the directors of the Water and Sewer Board to *594 serve shorter terms (four years) and to be appointed by the City Council from districts.
It is clear that the Legislature intended to legislate broadly. This is evidenced by the use of such broad language as the phrase "municipal board, committee, or like body." The Act merely allows for Class 3 municipalities to increase the number of members serving on a "municipal board, committee, or like body." This language seems to include a board of a municipal agency such as the Water and Sewer Board, irrespective of the fact that the Water and Sewer Board is a public corporation. It has been held that a water and sewer board is an administrative agency and performs city functions. See International Union of Operating Engineers, Local Union No. 321 v. Water Works Board, 276 Ala. 462, 463, 163 So.2d 619, 620 (1964). Although the Water and Sewer Board is a corporation, it is so organized to perform its functions as an agency of the City. Accordingly, such a board is treated in the same light as the City itself. See State ex rel. Richardson v. Morrow, 276 Ala. 385, 162 So.2d 480 (1964). A member of the Water and Sewer Board could be considered an officer of the City. See Roberts v. Fredrick, 295 Ala. 281, 328 So.2d 277 (1976). The mere fact that an administrative agency is organized as a corporation does not necessarily deprive it of the qualities of a governmental agency. See Opinions of the Justices, No. 45, 235 Ala. 485, 179 So. 535, 536 (1938). Therefore, this Court concludes that by using broad language in the Act, the Legislature evidenced an intent to include any instrumentality by which a city performs its governmental functions. "The intent of the body which enacted the legislation `should not be defeated by narrow construction based on nice distinctions in the meaning of the words.'" Service Realty & Ins. Co. v. Klinefelter, 470 So.2d 1172, 1175 (Ala.1985).
As stated above, the members of the Water and Sewer Board are already appointed by the City Council. By interpreting the Act to allow the City to increase the number of members on the Water and Sewer Board, this Court does not need to consider whether that interpretation increases the amount of political control the City Council will have over the boards affected by its ordinance. Those decisions are policy decisions that have been made by the legislative branch of the State Government.
As noted earlier, the City says that the purpose of the legislation was to "to enhance democracy in the functioning of municipal boards, committees, and like bodies in Class 3 municipalities." Because we find the purpose of the Act was to obtain broader representation of the community on the boards of public corporations, and because the Legislature, in passing the Act, determined that broader representation on such boards would be desirable, then we cannot, and should not, construe the Act so as to thwart this legislative purpose. The Act is limited to Class 3 municipalities, which include only Montgomery and Huntsville. The Act does not apply to any other public corporations or other governmental entities. Because of the limited scope of the bill that became Act No. 93-704, the Legislature may have treated the bill differently than if it had applied to all municipalities in the state. We judicially know that it is not uncommon for the Legislature to classify municipalities differently. We consider such classifications and questions arising from such classifications to be primarily political questions.
The cross-appellants, the Water and Sewer Board and the intervenors, while arguing strongly that the Water and Sewer Board is not a "municipal board, committee, or like body," alternatively argue that if it is held to be within that phrase, then the Act violates both the United States Constitution and the Constitution of Alabama. The Board says that the Act is amendatory rather than merely an Act to repeal existing laws, and as an amendatory act violates the provisions of § 45 of the Alabama Constitution; in making this argument they adopt essentially the findings made by the trial court in its memorandum opinion. They argue that the title of the Act does not give proper notice of the compulsory nature of the nine-member-board requirement and that the Act will unconstitutionally amend Ala.Code 1975, § 11-50-313(a), without having identified that statute *595 in its text either by number or by quoting from its language.
Section 11-50-313(a), in pertinent part, provides as follows:
"[T]he governing body of any municipality which has heretofore or hereafter authorized the creation of a corporation as provided in this article may, at its option, increase the board of directors from three to five members to serve according to all the conditions and terms set forth in this article."
The cross-appellants maintain that it is well settled that repeal by implication is not favored in Alabama. This Court has held that in order for a statute to impliedly repeal a previous statute, the degree of conflict required between the statutes is irreconcilability. City of Tuscaloosa v. Alabama Retail Association, 466 So.2d 103, 106 (Ala.1985). If it is possible to reconcile different acts under a reasonable construction, then all of the acts should be given effect. Sand Mountain Bank v. Albertville National Bank, 442 So.2d 13, 19 (Ala.1983). The cross-appellants maintain that reconciliation of the Act and § 11-50-313(a) is possible if the Act is construed so as not to apply to public corporations. We disagree.
The cross-appellants also argue that if the Act is construed so as to apply to public corporations, then it violates the "one subject" requirement of § 45, because each public corporation is established by and operates under its own legislation and has been established for a unique purpose and empowered with special authority.[6] We find this argument to be without merit also. The title to the Act is specific enough. It reads: "An Act Relating to Class 3 municipalities; to further provide for the number of members of municipal boards, committees, or like bodies." The Water and Sewer Board argues that the Act, to be applicable to it, would have to at least refer to a municipal public corporation. As we have pointed out above, we cannot accept this argument. The title, if it read that way, might have given more notice of the scope of the Act, but it is not constitutionally infirm because it did not.
The cross-appellants also argue that the Act is unduly vague and overbroad. They say that there is no instruction in the Act as to the length of the terms of any new directors, the rotation of such terms, or even the number of new directors the City Council may add in its sole discretion. They contend that the vagueness of the Act is demonstrated by the City Council's passage of the Ordinance, which they maintain clearly exceeds the intent of the Legislature because, they say, it purports to alter the staggering and lengths of terms of board members, the methods of appointment of board members, and various other statutory mandates.
The legislative mandate in the Act relates only to the number of members who serve on the Boards. If the purpose of the legislation was "to enhance democracy in the functioning of municipal boards, committees, and like bodies in Class 3 municipalities," as the City argues, and if the City is seeking to carry out that legislative purpose, it is difficult to see how carrying out the intent of the Legislature would create great difficulties or confusion. Of course, an Act, constitutional on its face, could be unconstitutional in its application, and problems could develop that might cause the Legislature to more fully consider and address the issue in view of our holding, but we cannot agree with the trial court that the Act would violate § 45 of the Constitution if public corporations are covered by its provisions.
We reach this conclusion by setting out how we interpret Section 45 as it relates to this Act. Section 45 mandates that "[e]ach law shall contain but one subject, which shall be clearly expressed in its title ...; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length." The Act does not "repeal" the laws applicable to public corporations. The Act merely makes a reasonable and measured *596 change in the number of board members of such corporations. The Legislature stated that the Act would govern, "any law to the contrary notwithstanding." This Court has recognized that the Legislature may amend or repeal laws by implication without expressly reciting the affected law in the new Act:
"There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application notwithstanding the prior special or specific act."
Buskey v. Mobile County Bd. of Registrars, 501 So.2d 447, 452 (Ala.1986) (quoting 50 Am.Jur. Statutes, § 564, as quoted in Connor v. State, 275 Ala. 230, 153 So.2d 787 (1963)). We find in this case such a "manifest legislative intent that the general act shall be of universal application."
We have carefully studied each of the arguments that the Water and Sewer Board makes to sustain the judgment of the trial court declaring that the Act did not apply to the Water and Sewer Board and that if it were held to apply to the Water and Sewer Board it would be unconstitutional. Some of these arguments were sufficient to convince the trial judge that the Act did not apply to the Water and Sewer Board.
We hold that the trial court erred in declaring that Act No. 93-704 did not apply to the Water and Sewer Board. In view of that holding, we address the constitutional question presented by the Water and Sewer Board: whether the Act, if held to be applicable to it, is unconstitutional. On the constitutional question, we restate what we said in Moore v. Mobile Infirmary Association, 592 So.2d 156 (Ala.1991), where we stated the rule of law applicable when this Court is considering whether a particular statute is constitutional:
"In reviewing the constitutionality of a statute, we `approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.' Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)."
592 So.2d at 159. As to whether an Act violates the "single subject" requirement of § 45, this Court stated in Thomas v. Niemann, 397 So.2d 90, 92-93 (Ala.1981):
"As we have so often said, § 45 should not be construed so as to handicap the legislative process. The constitutional purpose in requiring single subject legislation is [laudable] but has been met when the separate provisions of a bill are germane to the bill's general purpose."
Accordingly, we hold that Act No. 93-704, construed to apply to boards of municipal public corporations in Class 3 municipalities, does not violate the "one subject" and "clear expression" requirements of § 45 of the Constitution of 1901 and is not unconstitutionally vague under § 6 of the Constitution of 1901 or the Fourteenth Amendment to the United States Constitution.
Based on the foregoing, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; APPLICATION OVERRULED.
SHORES, INGRAM,[7] COOK and BUTTS,[8] JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
I agree with the trial judge, Judge Randall Thomas. Municipal corporations are not included within the designation "municipal *597 board, committee, or like body." Municipal corporations are created by compliance with state statutes that provide for the number of directors and for the method of their selection. The number of directors and the method of their selection must comply with the certificate of incorporation and with the enabling legislation. If the legislature wishes to change the enabling legislation, it certainly has the power to do so; however, Act No. 93-704 did not change it. If the legislature meant for it to do so, then the legislature ran afoul of Article IV, § 45, of the Constitution of Alabama of 1901. I would affirm; therefore, I dissent.
NOTES
[1] When the Act was enacted, there were only two Class 3 municipalities in the State, Montgomery and Huntsville.
[2] Specifically, the Act provides:

"Section 1. In any Class 3 municipality, any law to the contrary notwithstanding, the number of members who shall serve on any existing or future municipal board, committee, or like body, shall be the same as the number of members on the municipal governing body unless the municipal governing body by a two-thirds vote of the total membership of the municipal governing body shall provide for a greater or lesser number of members.
"Section 2. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains.
"Section 3. All laws or parts of laws which conflict with this act are repealed.
"Section 4. This act shall become effective immediately upon its passage and approval of the Governor, or upon its otherwise becoming a law."
[3] The complaint also named Attorney General James H. Evans as a defendant; however, the trial court granted the attorney general's motion to dismiss all claims against him and allowed him to participate as amicus curiae.
[4] From the House and Senate Journals we have determined that House Bill 681, which became Act No. 93-704, was introduced in the Alabama House by Representatives by John Knight of Montgomery on the 11th legislative day; that it was assigned to the Committee on Local Government, House Journal, p. 878; that it was given a favorable report on the 25th legislative day, id. p. 2550; that it was placed on a special order calendar, id. p. 2737; that a Budget Isolation Resolution was adopted, id. p. 3093; and that the bill was read a third time and adopted. Id. p. 3093. A companion bill, Senate Bill 247, was introduced by Senator Charles Langford of Montgomery in the Senate on the second legislative day and was assigned to the Standing Committee on Governmental Affairs/Local Government. Senate Journal, p. 135. S. 247 received a favorable report on the sixth legislative day, and was read a second time and placed on the calendar. Id. p. 322. S. 247 was placed on a special order calendar on the 26th legislative day. Id. p. 1725. The Senate, on the 28th day, received H. 681, id. 2024, and also placed S. 247 on the special order calendar. Id. p. 2190, 2191. S. 247 received its third reading, and, on motion of its sponsor, Senator Langford, was postponed temporarily. Id. p. 2223. On the 29th legislative day, the Senate Standing Committee on Governmental Affairs/Local Government reported H. 681 favorably and it received its second reading in the Senate. Id. 2284. On the 30th legislative day, the Senate adopted a Budget Isolation Resolution relating to H. 681, and it received its third reading in the Senate. Senator Langford requested suspension of the rules, to bring up H. 681; it was read a third time and adopted, 20 Yeas, 0 Nays. Id. p. 2554. H. 681 was signed by the Governor at 5:51 p.m. on May 19, 1993.
[5] The fact that the legislation applied only to Class 3 municipalities may have affected its assignment to committees in the House and Senate, and it was adopted late in the Session, a fact argued by the Water and Sewer Board to support its argument that the bill "caught Legislators sleeping." Otherwise, the legislative history in the Journals does not support the argument that legislators were unaware of its passage or of its provisions.
[6] The trial court held that, if construed to cover public corporations, the Act would violate § 45 of the Constitution of 1901 by "amending" the legislation authorizing each public corporation, without setting out the legislation that was thereby amended.
[7] Justice Ingram was not present at the oral arguments but has listened to the tapes of the oral arguments.
[8] Justice Butts did not participate in this Court's original decision in this case; however, he has studied the briefs submitted and has listened to the tapes of the oral arguments.